

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00349-CR

———————————————

ROSS THOMAS BRANTLEY III, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1609793R

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

A jury found Appellant Ross Thomas Brantley III guilty of ten counts of aggravated sexual assault of a child and six counts of indecency with a child by contact and assessed his punishment at imprisonment in the penitentiary for life and a $10,000 fine for each of the ten aggravated-sexual-assault-of-a-child counts and for twenty years and a $10,000 fine for each of the six indecency-with-a-child-by-contact counts. *See* Tex. Penal Code Ann. §§ 22.11, 22.021. In accordance with the jury verdicts, the trial court sentenced Brantley, but it further ordered the life sentence in count two to run consecutively to the life sentence in count one; it ordered all the remaining sentences to run concurrently with count one. *See id.* § 3.03(b)(2)(A). Brantley appealed. Because Brantley has not shown that his trial attorney's performance was deficient, we overrule his sole issue alleging ineffective assistance of counsel and affirm the trial court's judgment.

## I. BRANTLEY'S COMPLAINT

In one point, Brantley argues that his trial counsel rendered ineffective assistance. Specifically, he complains about trial counsel's not objecting to the following two exchanges between the prosecutor and Detective W.K. (Bill) Maddox:

> [Prosecutor:] Okay. After interviewing [the complainant], did you have any doubt in your mind that she was telling the truth about what she had told you?
>
> [Maddox:] I believed her and believed she was telling the truth.
>
> . . . .

2

[Prosecutor:] Okay. At the conclusion of your investigation, after you had spoken to [the complainant], gotten this sample, talked to [the complainant's mother], did you . . . see any reason that [the complainant] had, any motive for her to lie about these acts of sexual abuse?

[Maddox:] No.

[Prosecutor:] Is that something that you're looking for in your investigation?

[Maddox:] Yes. It is something that we will take into account. We have cases where there might be [a] divorce or a custody battle going on. We might have cases where there have been other disputes between the victim and the suspect. No one factor is going to make me make a decision, yes or no, on the case, but I do take into account everything that I can learn about . . . the relationship. In this case, I didn't see any motive for her to make the statement outside of it being a true statement.

Brantley argues that trial counsel should have objected because Maddox's responses were improper opinion testimony under Texas Rules of Evidence 701 or 702. Tex. R. Evid. 701 ("Opinion Testimony by Lay Witness"); 702 ("Testimony by Expert Witness").[1] Whether through an expert or a lay witness, vouching for another witness's credibility is irrelevant and inadmissible because it goes beyond assisting the

---

[1]Brantley also cites Texas Rule of Evidence 613(c), which prohibits using a witness's prior consistent statement to bolster the witness's credibility; the rule has an exception—a prior consistent statement is admissible to rebut an express or implied charge of recent fabrication. *See Trejo v. State*, 594 S.W.3d 790, 802 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The complained-of testimony might bolster the complainant's credibility (because Maddox stated that he believed her), but it does not bolster her credibility by using her prior consistent statements. The complained-of testimony does not identify any of the complainant's prior statements; we thus conclude that Rule 613(c) does not apply.

3

trier of fact in understanding the evidence or determining a fact in issue—it decides an issue for the jury. *See Elmawla v. State*, No. 02-19-00279-CR, 2021 WL 1421437, at *3 (Tex. App.—Fort Worth Apr. 15, 2021, pet. ref'd) (mem. op., not designated for publication).[2] Brantley complains that Maddox's testimony improperly vouched for the complainant's credibility and that trial counsel rendered ineffective assistance because he did not object.

## II.  STANDARD OF REVIEW

The United States Constitution guarantees a criminal defendant the effective assistance of counsel.  U.S. Const. amend. VI; *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017).  To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).  The record must affirmatively show that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See*

---

[2]Brantley's appellate counsel was also Elmawla's appellate counsel in *Elmawla*. *Elmawla* issued about a year after counsel filed Brantley's brief.

4

*Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08; *Thompson*, 9 S.W.3d at 813.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

### III. DISCUSSION

Defense counsel's failure to object to certain improper evidence does not by itself indicate ineffective assistance of counsel unless the record clearly confirms that no reasonable trial counsel could have made such a decision. *See Long v. State*, 502 S.W.2d 139, 141 (Tex. Crim. App. 1973) (op. on reh'g); *Moore v. State*, No. 02-19-00371-CR, 2021 WL 1569157, at *5 (Tex. App.—Fort Worth Apr. 22, 2021, no pet.)

(mem. op., not designated for publication). Brantley contends that trial counsel's conduct falls within this exception. We disagree.

Initially, we note that although both appellate counsel and Brantley (pro se) filed motions for new trial, neither alleged ineffective assistance of counsel, and neither motion resulted in a hearing at which evidence was presented. Thus, the record is silent regarding counsel's explanation for not objecting. If counsel's reasons for his conduct do not appear in the record and if there is at least the possibility that the conduct could have been a legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct appeal. *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002); *Moore*, 2021 WL 1569157, at *5. Turning to the record, we conclude that there is at least the possibility that counsel's conduct could have been a legitimate trial strategy.

Trial counsel was not oblivious to appellate counsel's concerns. During final argument, trial counsel repeatedly emphasized that it was the jury's responsibility, not the witnesses', to decide whether to believe the complainant:

> Ladies and gentlemen, we all want to thank you for your participation in this. You make our system work. Without you, you know, I don't know . . . what we'd do, but you are necessary, and we do appreciate your attention and the time and effort you put in on this.
>
> We heard from a variety of witnesses, and some discrepancies came up here. And there seemed to be . . . kind of an overriding theme from their witnesses . . ., ["D]on't worry about it, don't pay any attention to this, that's not a concern.["] Well, you're the jury. You look at all the evidence. You decide if it's a concern or not. You decide if it's an issue.

You decide what the evidence is, not the witness up there telling you their opinion.  You decide.

We heard from Ms. Dula and Detective Maddox, again, about the age.  What did they tell you?  Well, let's see.  We had evidence that, well, maybe she was five or six, maybe 11 or 12.  And then they both had to say, ["O]h, well, don't worry about this.  You know, children this, children that.["]  Detective Maddox interviewed a grown woman.[3]  He didn't interview a child.  You decide if those discrepancies are an issue and not the witness.

We heard from . . . Connie Housley, a nurse.  We talked about different tests that were done.  And . . . she basically said, "[W]ell, don't worry about these contradictory test results.["]  One was positive.  One was negative.  You know, just -- just forget about that.

Well, ladies and gentlemen, you decide if it's an issue.  You decide if it's a concern or not.  The State has the burden to prove their case to you beyond a reasonable doubt.  They don't have to prove their case to their witnesses.  They have to prove it to you.

We also heard that . . . a child can contract herpes during childbirth.  It can be passed to the infant.  You know, the State has the burden of proof to bring you all the evidence.  They have the burden, and it never shifts to my client ever.

[The complainant], she finally recalled being asked in 2000 -- I believe November of 2007 and March of 2013, she was asked by the trained CPS workers -- we heard how they're trained to do these sexual abuse exams out in the field -- asked those questions.  She said, ["N]o.["]  There was no outcry whatsoever.  And you -- again, you hear from their witnesses saying, ["D]on't worry about that, don't worry about that.["]  Well, ladies and gentlemen, that's for you to decide.  That is your job here to decide the evidence, not the witnesses'.

---

[3]The complainant was under the age of fourteen when the abuse occurred and made a delayed outcry when she was fifteen years old.  She was seventeen years old when Maddox interviewed her and twenty years old when she testified.

> We heard that [the complainant] talked to the district attorney's office, I believe, [to] about six different prosecutors, apparently about 15 different times. Is that an issue? That's in evidence. It's something for you to consider how much sort of influence, how much sort of coaching could possibly take place with that much contact. You decide her credibility.
>
> You don't listen to a lady that looks at the interview and says, ["W]ell, I believe her.["] That's for you to decide when you saw [the complainant] on the . . . stand. That's your job.
>
> Ladies and gentlemen, the State has the burden of proof to prove every element in all 16 counts here, and they did not meet that burden. Thank you.

Thus, trial counsel dealt with the issue about which appellate counsel complains, but trial counsel went about it in a different manner—he correctly argued that it was the jury's (not the witnesses') call whether to believe the complainant. *See Elmawla*, 2021 WL 1421437, at *3. Counsel wove Maddox's belief into his argument. *See Long*, 502 S.W.2d at 141 ("Certainly a valid objection could have been made, but the failure to object may well have been a part of trial strategy, since counsel argued to the jury that such informer was perhaps the guilty party and was only trying to shield himself by giving such information . . . ."). We conclude that the record shows a plausible reason for trial counsel's not objecting to the complained-of testimony. *See Blackwell v. State*, 193 S.W.3d 1, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that absent direct evidence in the record to show why counsel did not object to complained-of testimony, counsel's reasons for his actions are presumed plausible).

Ultimately though, we may not speculate regarding why trial counsel acted as he did and must presume that a reasonable trial strategy supported his conduct. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (stating that retrospective speculation was not a basis on which to build a claim of ineffective assistance of counsel); *Blackwell*, 193 S.W.3d at 21–22 (asserting that courts will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning); *see also Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) (presuming that a reasonable trial strategy supported defense counsel's actions because the court could only speculate as to why counsel acted or failed to act). Without more, we hold that Brantley has not met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Because he has not shown deficient performance, he necessarily cannot show prejudice caused by any deficiency. *See Nava*, 415 S.W.3d at 307.

We overrule Brantley's point.

## IV. CONCLUSION

Having overruled Brantley's sole point, we affirm the trial court's judgments for ten counts of aggravated sexual assault of a child and six counts of indecency with a child by contact.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 19, 2021